**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

STEVEN COLLAZO,

                                   Plaintiff,

           v.                                              No. 06-CV-941
                                                              (NAM/DRH)

JAMES PAGANO, Food Service Manager,
Great Meadow Correctional Facility; DR.
EDMUNDO NUNEZ, Great Meadow
Correctional Facility Physician; and GARY
GREENE, Superintendent, Great Meadow
Correctional Facility,

                                   Defendants.
_____

**APPEARANCES:**                              **OF COUNSEL:**

STEVEN COLLAZO
97-A-6812
Plaintiff Pro Se
Great Meadow Correctional Facility
Post Office Box 51
Comstock, New York 12821-0051


HON. ANDREW M. CUOMO                    BRUCE J. BOIVIN, ESQ.
New York State Attorney General          Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

     Plaintiff pro se Steven Collazo ("Collazo"), an inmate in the custody of the New York

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42

U.S.C. § 1983 alleging that defendants, three DOCS employees, violated his constitutional

_____

     [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

rights under the Eighth and Fourteenth Amendments.  Compl. (Docket No. 1).  Presently

pending are Collazo's motion for partial summary judgment and defendants' cross-motion

for summary judgment, both pursuant to Fed. R. Civ. P. 56.  Docket Nos. 45, 54-56, 59-62.

For the following reasons, it is recommended that Collazo's motion be denied and that

defendants' cross motion be granted.


## I.  Background

The facts and procedural history of this case are set forth in the Report-

Recommendation and Order filed January 31, 2008, familiarity with which is assumed.  See

Docket No. 31.

As relevant to the present motions, Collazo has a documented history of high

triglycerides during his incarceration.  Collazo Affirm. (Docket No. 45-2) ¶ 3.   While

incarcerated at Great Meadow Correctional Facility, Collazo was treated by defendant

Nunez, a physician.  Nunez Decl. (Docket No. 54-4) ¶ 7.[2]  Nunez first saw Collazo in May

2002 and noted Collazo's history of elevated triglycerides.  Nunez Decl. ¶ 9.  Nunez

continued Collazo's prescription for triglyceride-lowering medication and counseled him to

stop smoking.  Id.

On January 3, 2003, Collazo began complaining of indigestion and requested a

therapeutic diet.  Nunez Decl. ¶ 11.  On January 22, 2003, Nunez evaluated Collazo,

prescribed a "low fat" diet, and requested a lipid level test.  Id. ¶¶ 12-13, 15; Docket No. 54-

---

[2] Defendants have traditionally filed Collazo's ambulatory health records with the
Court.  The thirty pages of documents and thirty-six entries are consistent with the facts
related in Nunez's declaration.

4 at 16.  This prescribed diet specifically addressed Collazo's continuously elevated triglyceride levels.  Nunez Decl. ¶¶ 19, 25.[3]  During that meeting, Nunez and Collazo discussed DOCS Form 3273,[4] Collazo agreed to follow the diet, Collazo expressed understanding that "failure to follow the diet could result in disciplinary sanctions, removal from the diet, or both," and the form was signed by both parties.  Id. ¶¶ 28-29.  On September 16, 2003, defendant Pagano, Director of Food Services at Great Meadow, wrote to Paolano, Director of Health Services at Great Meadow, requesting that Collano's therapeutic diet be terminated due to Collazo's alleged non-compliance.  Docket No. 54-6 at 16; Pagano Decl. (Docket No. 54-6) ¶ 23; Paolano Decl. (Docket No. 54-3) ¶ 27.  The request was granted.  Docket No. 54-6 at 16; Pagano Decl. ¶ 25; Paolano Decl. ¶ 28.

Nunez next saw Collazo on June 26, 2003.  Nunez Decl. ¶ 31.  Nunez ordered blood work.  Id.  On the date of the scheduled blood draw, July 14, 2003, Collazo failed to appear.  Id. ¶ 32.  The blood draw was rescheduled and successfully completed on July 30, 2003.  Id.  The results were normal.  Id.  Nunez scheduled Collazo for a follow-up appointment in August and, when Collazo failed to appear, reschedule the appointment on two additional

---

[3] Collazo mistakenly states that he suffered from dangerously high cholesterol levels.  Pl. Mem. of Law (Docket No. 45-3) at 3, ¶ 7.  Collazo's cholesterol readings were consistently within normal limits and, when they were elevated, the levels were only marginally above the normal limit.  Nunez Decl. ¶¶ 18, 20, 23-25.

[4] This form is used by a "treating physician . . . to [initiate], modify or cancel [a therapeutic] diet [prescribed] for a medical reason."  Nunez Decl. ¶ 27; see also Paolano Decl. (Docket No. 54-3) ¶ 23.  "[A] Form 3273 is not required to remove an inmate from a therapeutic diet for reasons of non-compliance."  Paolano Decl. ¶ 21 (emphasis added).  Non-compliance is an administrative, not a medical issue and when non-compliance is brought to the attention of the Director of Health Service, the Director assesses whether termination from the diet "would have a significant detrimental [e]ffect on the inmate's health."  Paolano Decl. ¶¶ 18-19.

occasions.  Id. ¶¶ 33-34.  On September 19, 2003, Collazo advised a nurse that his

therapeutic diet was cancelled and he wished to have it restarted.  Id. ¶ 35.  The

appointment was again scheduled and then rescheduled due to Collazo's failure to appear

during October and November.  Id. ¶¶ 36-39.  Collazo visited the medical unit on December

15, 2003, again requesting an appointment to discuss re-institution of his therapeutic diet.

Id. ¶ 39.  Collazo failed to appear for his subsequently scheduled and rescheduled doctor's

appointments in January and March.  Id. ¶¶ 39-41.  Collazo finally saw Nunez again on April

21, 2004.  Id. ¶ 43.

During this appointment, Collazo's weight and blood pressure were normal and Nunez

ordered several laboratory tests.  Nunez Decl.  ¶ 43.  The tests were completed on June 9,

2004.  Id. ¶ 44.  On June 17, 2004, Nunez reported to Collazo that he had no issues with

his musculature but that based on Collazo's history of elevated triglycerides and blood

sugar, tests should be conducted to determine whether Callazo was diabetic.  Id. ¶ 46.  On

July 8, 2004, after reviewing a battery of diagnostic test results, Nunez determined that

Collazo was diabetic but was successfully being treated with medication Nunez had

prescribed and by Collazo's self-monitoring of his diet.  Id. ¶ 48.

On July 14, 2004, Collazo's diabetes was well under control.  Nunez Decl. ¶ 49.

However, Nunez still prescribed a carbohydrate-controlled diet to assist in restricting his

sugar intake.  Id. ¶¶ 49-50; Paolano Decl. ¶ 36; Pagano Decl. ¶ 30; Collazo Affirm. ¶ 16.

From July 19 through July 25, Pagano conducted an audit of the food services programs

and discovered that Collazo had missed eighteen out of twenty-one therapeutic diet meals.

Pagano Decl. ¶ 33.  On July 29, 2004, Collazo was notified that he had again been

terminated from he therapeutic diet for non-compliance.  Id. ¶¶ 34-35, 37; Paolano Decl. ¶¶

4

37-39; Collazo Affirm. ¶ 19.  However, Collazo had never been advised that his therapeutic diet had been resumed, this accounted for his failure to participate, and on September 21, 2004, Collazo was re-issued a therapeutic diet order and thereafter remained compliant with the diet.  Pagano Decl. ¶¶ 40-43; Paolano Decl. ¶¶ 43-45; Collazo Affirm. ¶ 20.

## II. Discussion

Collazo contends that his Eighth and Fourteenth Amendment rights were violated when defendants twice terminated him from the therapeutic diet program.  Collazo also contends that defendants' cross-motion is both untimely[5] and supported only by hearsay evidence. Defendants argue that the Eleventh Amendment bars recovery from defendants in their official capacities, Nunez and Greene were not personally involved in either alleged constitutional violation, Collazo's constitutional claims are meritless, and all defendants are protected by qualified immunity.  Defendants also oppose Collazo's motion for his failure to comply with the local rules.[6]

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party

---

[5] Defendants' cross-motion was previously determined timely filed.  Docket Nos. 49, 57.

[6] Defendants contend that Collazo failed properly to respond to their Statement of Material Facts Not in Dispute.  Based on the multitude of papers filed, the uncontroverted facts of the case were easily ascertainable and, therefore, defendants' contention in this regard should be rejected

is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191-92 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted))..  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

<u>Anderson</u>, 477 U.S. at 247-48.[7]

## B. Personal Involvement

Defendants contend that Collazo has failed to establish that defendants Greene or Numez was personal involved in any of the alleged constitutional deprivations.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)). Thus, supervisory officials may not be held liable merely because they held a position of authority. <u>Id.</u>; <u>Black v. Coughlin</u>, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) [T]he defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or

---

[7] Motions for summary judgment must be supported by admissible evidence. <u>Major League Baseball Properties, Inc. v. Salvino</u>, 542 F.3d 290, 309 (2d Cir. 2008). Defendants have proffered substantial evidence surrounding a misbehavior report which is inadmissible hearsay. Defendants assert a hearsay exception pursuant to Fed. R. Evid. 803(3) (then existing mental, emotional, or physical condition), but that exception does not apply as the statements in question are offered concerning actions a corrections officer witnessed and recorded pertaining to Collazo's mental and physical conditions and not his own. Therefore, this disputed evidence was not considered. <u>See</u> <u>United States v. Zapata</u>, 369 F. Supp. 2d 454, 459 (S.D.N.Y. 2005) (holding that Rule 803(3) does not apply to the declarant's observations of the mental, emotional, or physical condition of any person other than the declarant) (citing cases).

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing
to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319,

323-24 (2d Cir. 1986)).


### 1. Greene

A position in a hierarchical chain of command, without more, is insufficient to support a

showing of personal involvement.  Wright, 21 F.3d at 501.  Thus, Greene, the

Superintendent of Great Meadow, cannot be held liable solely because he held supervisory

positions over other corrections officers working in the facility.

Collazo does not contend that Greene was directly involved with the alleged

constitutional violations.  In fact, the only involvement Greene appears to have had was

delegating the grievances filed by Collazo to the appropriate Deputy Superintendents and

signing their finished investigations and recommendations.  Such delegation is appropriate

and insufficient to allege personal involvement.  See Garrido v. Coughlin, 716 F. Supp. 98,

100 (S.D.N.Y.1989) (holding that Commissioner of DOCS not personally liable for ignoring

plaintiff's letter of protest and request for an investigation).  Moreover, Greene's adoption of

the Deputy Superintendents' investigations and conclusions is also insufficient to establish

personal involvement as there exists no evidence in the record that Greene did any more

than sign these papers.  See Bodie, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (citations

omitted) (finding personal involvement where a supervisory official received, reviewed, and

responded to a prisoner's complaint).  Moreover, there exists no evidence that Greene

created an unconstitutional policy or custom or was grossly negligent in supervising.

Accordingly, defendants' motion on this ground as to Greene should be granted.


## 2. Nunez

Collazo complains that his constitutional rights were violated because of the manner in which his therapeutic diets were terminated.  There is no evidence in the record, nor has Collazo asserted, that Nunez was either directly or indirectly involved in the termination of his therapeutic diets.  The record shows that these terminations based on non-compliance were initiated by Pagano and Paolano and did not involve Nunez.  Nunez Decl. ¶ 61; Pagano Decl. ¶¶ 24-25, 34-35, 53-55; Paolano Decl. ¶¶ 26-29, 34, 37-39, 41, 44.  Nunez's only involvement was in prescribing, not terminating, the therapeutic diets.  Nunez Decl. ¶ 64.  Moreover, there is no evidence or allegation that Nunez created the policies or customs concerning the implementation or termination of the therapeutic diets.  Additionally, there is no evidence that Nunez supervised any individuals and, if he did, none of those individuals are named defendants in this action and there is no evidence that any supervision was undertaken in a grossly negligent fashion.

Accordingly, defendants' motion on this ground as to Nunez should be granted.


## C. Eleventh Amendment

Collazo sues the three defendants in both their individual and official capacities. Compl.  Defendants seek summary judgment on Collazo's claims against defendants in their official capacities.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall

9

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)).  Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment.  Halderman, 465 U.S. at 100.  Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

A suit against a state official in his or her official capacity is a suit against the entity that employs the official.  Farid v. Smith, 850 F.2d 917, 921 (2d Cir. 1988)(citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Here, Collazo seeks monetary damages against defendants in their official capacities for acts occurring within the scope of their duties with DOCS.  Thus, the Eleventh Amendment bar applies and serves to prohibit Collazo's claim for monetary damages against defendants in their official capacities.

Accordingly, it is recommended that defendants' motion on this ground be granted.

**D. Eighth Amendment**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  This prohibition extends to the provision of food.. See Robles v. Coughlin, 725 F .2d 12, 15 (2d Cir.1983); Ramos v. Lamm, 639 F.2d 559, 571 (10th Cir.1980). It also includes the provision of medical care.  Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson v. McMillian, 503 U.S. 1,9 (1992)).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs." Chance, 143 F.3d at 702. Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate. Chance, 143 F.3d at 703. Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).[8]

Defendants do not dispute that Collazo's diabetes and high triglyceride levels constituted a serious medical need. Instead, defendants seek summary judgment on the ground that Collazo has not demonstrated that any defendant was deliberately indifferent. The record does not support the contention that any defendant was deliberately indifferent to Collazo's medical needs. Collazo has presented no evidence that his termination from the therapeutic diet program was done maliciously. The unrebutted facts establish that based upon the information provided to Pagano and Paolano, there appeared a reasonable basis for terminating Collazo's participation. Pagano Decl. ¶¶ 22-25, 33-35; Paolano Decl. ¶¶ 26-28, 37-39. When Collazo disagreed, he successfully employed the grievance

---

[8] To the extent that Collazo alleges that the implementation of DOCS directives pertaining to termination of therapeutic diets constituted a violation of his procedural due process rights, such claims are without merit. See Mandala v. Coughlin, 920 F. Supp. 342, 352 (E.D.N.Y. 1996) (granting summary judgment for due process claim based on the denial of a special high fiber diet because the claims failed to establish a protected liberty interest).

process which resulted in his re-examination by his physician and receipt of an additional prescription for the diet program.  Docket No. 54-5 at 8, 14.

After the first diet termination, the delay in restoring Collazo to the diet was his own failure to attend the multiple appointments scheduled with Nunez from August 2003 until April 2004.  Nunez Decl. ¶¶ 33-43, 66-67.  There is no dispute that Collazo was fully aware that a physician's order was required to re-initiate the therapeutic diet.  Collazo  Affirm. ¶¶ 8, 21.  The delay was solely due to Collazo's repeated inactions.  Thus, none of defendants were deliberately indifferent to Collazo's medical need or delayed provision of, a second therapeutic diet.

Moreover, when Nunez was finally able to examine Collazo, he performed a myriad of diagnostic procedures to evaluate fully Collazo's current physical condition.  Nunez Decl. ¶¶ 43-48.  Less than two months later, Nunez preemptively prescribed medication for Collazo's suspected diabetes and Collazo was educated sufficiently to assume responsibility for watching his sugar intake and attending monthly nutrition meetings.  Nunez Decl. ¶ 48. During the appointment when Nunez prescribed the second therapeutic diet, Collazo's diabetes was already well under control.  Nunez Decl. ¶¶ 49-50.  Thus, there is no indication that Nunez was deliberately indifferent to, or intentionally delaying, treatment which would stabilize Collazo's medical condition.[9]  Conversely, Collazo's vital signs indicated that he was receiving proper treatment.

Additionally, after the diet was terminated a second time, the record shows that once

---

[9] To the extent that Collazo mistakenly alleges that he had dangerously high cholesterol and should have been on a low cholesterol diet, those arguments represent nothing other than a difference of opinion over his treatment.  As previously stated, this is insufficient to state an Eighth Amendment violation.  See Chance, 143 F.3d at 703.

again Collazo successfully used the grievance program to obtain a remedy.  Docket No. 54-5 at 14.  There is no dispute that an administrative failure caused Collazo not to be notified of his first re-instatement to the diet.  Pagano Decl. ¶¶ 40; Paolano Decl. ¶¶ 43-45.  This constitutes, at worst, negligence.  The record fails to indicate that this failure was intentional or malicious, and mere negligence, without more, is insufficient to support a claim of deliberate indifference. Weyant v. Okst, 101 F.3d 845, 856-57 (2d Cir.1996).  After the notification failure was discovered, Pagano, with the help of Paolano, timely restored the diet.  Docket No. 54-3 at 14.

Accordingly, defendants' motion for summary judgment on this ground should be granted.


## E. Qualified Immunity

Finally, defendants claim that even if Collazo's constitutional claims are substantiated, defendants are nevertheless entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990).

A court must first determine whether, if plaintiff's allegations are accepted as true, there

14

would be a constitutional violation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. <u>Aiken</u>, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached concerning any of Collazo's Eighth Amendment claims because, for the reasons discussed above, Collazo has failed to raise a question of fact as to the first prong of the inquiry.

Additionally, assuming <u>arguendo</u> that defendants violated Collazo's Fourteenth Amendment rights, no case decided by the Supreme Court or the Second Circuit has held that a prison official deprives an inmate of those rights when he or she terminates an inmates therapeutic diet for the inmate's non-compliance.[10]  When determining whether a defendant is entitled to qualified immunity, a court must consider "whether (1) . . . the right in question was defined with reasonable specificity; (2) . . . relevant decisional law supports the existence of the right in question; and (3) . . . under preexisting law a reasonable defendant official would have understood that his actions were lawful." <u>Abdush-Shahid v. Coughlin</u>, 933 F. Supp. 168, 185 (N.D.N.Y. 1996) (internal citations and quotation marks omitted).  In this case, the only right that was well established was that "an inmate [has a] constitutional right to a meal that is sufficient to sustain the prisoner in good health . . . ."

---

[10] Collazo argues that defendants failed to comply with their own DOCS directive regarding the termination of a therapeutic diet.  "Generally, violations of state laws or procedures do not rise to the level of constitutional violations." <u>Gilbert v. Goord</u>, No. 03-CV-423 (GLS/GJD), 2007 WL 3232273, at *6 (N.D.N.Y. Oct. 31, 2007) (citations omitted).  Additionally, defendants' testimony indicates that Collazo has confused the procedure for initiating a therapeutic diet with that for terminating a therapeutic diet due to non-compliance.  Paolano Decl. ¶¶ 6, 8, 14-16, 21-23; Pagano Decl. ¶¶ 48-53; Docket No. 54-5 at 14.  For both reasons, Collazo's contention here is without merit.

Brown v. Johnson, No. 98-CV-6260CJS(F), 2003 WL 360118, at *9 (W.D.N.Y. Feb. 14, 2003).

Even though Collazo possessed the right to a nutritionally adequate meal, defendants are still entitled to qualified immunity if their actions, given the specific factual circumstances of the case, "demonstrate that . . . it was objectively reasonable for defendants to believe that their actions [in terminating the diet for alleged non-compliance] were lawful." Abdush-Shahid, 933 F. Supp. at 185 (citations omitted).  All defendants proffered identical testimony that the procedures for termination of a diet due to non-compliance included an investigation, memorandum to the Director of Health Services from the Director of Food Services for a determination whether the termination of the diet would be detrimental to the inmate's health, and medical approval for termination.  Paolano Decl. ¶¶ 14-16, 18-22; Pagano Decl. ¶¶ 15, 51-53.  No clearly established law existed, then or now, holding that this procedure was unlawful.[11]  The record is undisputed that defendants followed the prescribed procedure and that any departure was inadvertent, not intentional.

Accordingly, defendants' motion should be granted in the alternative, on this ground.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

1.  Collazo's motion for summary judgment (Docket No. 45) be **DENIED** in all

---

[11]This procedure also included a reasonable remedy for aggrieved inmates.  Once Collazo grieved his termination and received favorable determinations, defendants acted reasonably in instructing Collazo to receive additional guidance from the medical department, as no other individual could facilitate the order for the therapeutic diet. Docket No. 54-5 at 8, 11.

respects; and

2. Defendants' cross-motion for summary judgment (Docket No. 54) be **GRANTED** as to all defendants and all claims**.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  July 16, 2009
           Albany, New York

United States Magistrate Judge